Andrew Rozynski, Esq. (NY #5054465)
EISENBERG & BAUM, LLP
24 Union Square East, PH
New York, NY 10003
212-353-8700 (tel.)
917-591-2875 (fax)
arozynski@eandblaw.com
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| BARRY DEAVER SR., <br><br> Plaintiff, <br><br> v. <br><br> WORK SERVICES CORPORATION, <br><br> Defendant. | **Civil Action No.: 7:24-cv-64** <br><br><br> **COMPLAINT** |

Plaintiff Barry Deaver Sr. ("Plaintiff" or "Mr. Deaver"), by and through his undersigned counsel, Eisenberg & Baum, LLP, states his Complaint against Defendant Work Services Corporation ("Defendant" or "WSC") as follows based upon personal knowledge and belief:

### INTRODUCTION

1. This case addresses the distressing mistreatment of Plaintiff Barry Deaver Sr., a Deaf individual who faces ongoing bullying and harassment in the workplace solely due to his disability. Despite ten years of valuable contributions to his employer, Defendant Work Services Corporation, Mr. Deaver has endured persistent discrimination that violates his rights under federal and state law. This action seeks redress for the Defendant's continuous failure to address, much

less rectify, the deeply troubling violations against Mr. Davidson at work, despite his repeated appeals for intervention with management.

2. Plaintiff brings this action to compel Defendant to cease unlawful discriminatory practices and implement policies and procedures that will ensure that he, as a deaf person, is free from discrimination. Plaintiff seeks declaratory, injunctive, and equitable relief; compensatory and punitive damages; attorneys' fees and costs; and all other available remedies to redress Defendants' unlawful disability discrimination in violation of Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12111, *et seq.*; Section 504 of the Rehabilitation Act of 1973 ("RA"), 29 U.S.C. § 794; and the Texas Labor Code, Tex. Lab. Code § 21.001, *et seq.*

## PARTIES

3. Plaintiff Barry Deaver Sr. is profoundly Deaf and communicates primarily in American Sign Language. He is substantially limited in the major life activities of hearing, reading, and speaking within the meaning of federal and state civil rights statutes. He is a resident of Wichita County, Texas. He has been employed by the Work Services Corporation as a janitor at Sheppard Air Force Base since approximately October 2014.

4. Defendant Work Services Corporation is and was at all relevant times a Texas corporation with its principal place of business in Wichita Falls, Texas. Defendant has a registered address for service at c/o Capitol Corporate Services, Inc., 1501 S Mopac Expressway, Suite 220, Austin, Texas 78746.

5. Upon information and belief, Defendant is a recipient of federal financial assistance.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction for the federal law claims under 28 U.S.C. §§ 1331 and 1343 because this action arises under the laws of the United States. This Court also

has supplemental jurisdiction for the state law claims under 28 U.S.C. § 1367 because those claims are substantially related to the federal law claims.

7. Venue is proper in this District under 28 U.S.C. § 1391(b) because, among other things, Defendant resides in this District, and the acts and omissions giving rise to this Complaint occurred in this District.

## STATEMENT OF FACTS

8. Mr. Deaver is a profoundly deaf individual who communicates primarily in ASL. To equally participate in work-related administrative processes, he requires the assistance of an ASL interpreter.

9. Mr. Deaver was initially hired by Defendant in or around October 2014. He presently works as a janitor at Sheppard Air Force Base commissary.

10. Beginning in or around 2021, Mr. Deaver has been subjected to discrimination, differential treatment, bullying, harassment, and retaliation on the basis of his disability by his supervisor and co-workers.

11. Mr. Deaver and his other Deaf co-worker were repeatedly subjected to this adverse treatment that non-disabled employees did not receive.

12. Mr. Deaver's supervisor, Bonnie Mathews ("Ms. Mathews"), and another employee working at the commissary, Bridgett Goins ("Ms. Goins"), regularly hovered over him and his other Deaf co-worker, applying a higher level of scrutiny to their work than their non-disabled co-workers.

13. As just one example, on or around November 12, 2021, Mr. Deaver and another Deaf employee were washing the floor when their supervisor arrived and stood over them with a disapproving look on her face. When Mr. Deaver tried to explain that the floor was still dirty

because they were in the middle of cleaning it, the manager continued to hover over them and stare disapprovingly while they continued working.

14. Mr. Deaver's supervisor also scrutinized his work on other occasions, including on or around April 1, 2022, when Mr. Deaver was instructed to clean the store's handrail by himself — a job generally completed by two employees per the employee handbook. While he was still completing this task, his supervisor added two additional rooms and another window to his workload even though the employee handbook sets out a detailed schedule for cleaning each area of the store. When Mr. Deaver calmly tried to explain he was still working on his other tasks and would not have time for all the assignments foisted upon him, his supervisor became angry with him for not following her orders. Mr. Deaver arrived at work the following Saturday to find a huge number of tasks for him to address not given to non-disabled workers, seemingly in retaliation for his attempt to set clear boundaries about the reasonableness of his workload.

15. On the same day as the above incident, Ms. Mathews stood over him while he swept floors in the warehouse. Mr. Deaver was so uncomfortable being observed and scrutinized that he hid from her behind a stack of boxes until she left the warehouse.

16. On another occasion in or around November 2021, Mr. Deaver's supervisor demanded that he and another Deaf employee park a motorized shopping scooter in front of the fire alarm system and emergency defibrillator. Mr. Deaver and the other employee, aware of the company policy stating that they should not park the scooter in a way that blocks the fire alarm system or defibrillator, declined to do so and explained why they would not. The supervisor then moved it herself. When the manager reprimanded Mr. Deaver and the other employee for parking the scooter improperly, they stated they did not do it. However, their supervisor maintained that she also did not do so and placed the blame on Mr. Deaver and the other Deaf employee. This interaction

painted Mr. Deaver as an unreliable employee; his supervisor used him as a scapegoat for her own actions.

17. Further, Mr. Deaver's supervisors frequently and intentionally create additional work for him and other Deaf employees by dirtying already cleaned surfaces.

18. On at least two occasions, Mr. Deaver's supervisors forced him and another Deaf employee to clean windows and floors they had already cleaned previously. Without being able to point to any particular areas in need of re-cleaning, the supervisors forced them to perform the entire task over again. The supervisors do not subject any non-disabled employees to such treatment.

19. During one incident in or around April 2022, Mr. Deaver's supervisor and several other employees ordered fast food. After eating, they left their trash and food products on the floor of the breakroom. When Mr. Deaver arrived at the beginning of his shift and brought it to his supervisor's attention, she brushed it off and simply told him he had to clean it up.

20. Mr. Deaver's supervisors have also demanded that he and other Deaf employees clock out before their shifts were scheduled to end, which would force him to forfeit wages and be reprimanded for not adhering to his schedule.

21. One such incident occurred on May 13, 2022, when Mr. Deaver had to repeatedly urge his supervisors to call 911 for an employee who had collapsed. The man who collapsed was a person with a disability who experienced a seizure. Mr. Deaver's supervisors repeatedly refused to call 911, telling Mr. Deaver to calm down and stop yelling, before ultimately doing so at Mr. Deaver's urging. His supervisors attempted to force him to clock out, ostensibly so he would be gone before the police arrived and therefore unable to inform the officers of the supervisors' negligence. When emergency personnel finally arrived, Mr. Deaver's supervisors told officers that

Mr. Deaver was lying. Mr. Deaver was unable to effectively express himself because no one else present understood ASL.

22. Mr. Deaver's supervisors and coworkers create a hostile work environment for him and other Deaf employees by excluding them socially, hovering over them as they work, and blaming them for errors made by other staff.

23. These supervisors and coworkers, Defendant's employees, take advantage of Mr. Deaver's lack of communication access at work; because his primary language is ASL, he is less able to counteract their incorrect statements and is a prime target for bullying and harassment in his predominantly English-speaking workplace.

24. Despite Plaintiff's multiple complaints to Defendant's managerial staff, Defendant has not meaningfully responded to Plaintiff's concerns.

25. Further, Defendant has failed to properly accommodate Mr. Deaver by refusing to provide an interpreter to facilitate his meaningful participation in the administrative process regarding his complaints.

26. Because English and ASL are distinct languages with unique vocabulary and grammatical structures, Mr. Deaver requires an ASL interpreter to participate fully and equally in administrative procedures. Lip reading, the process of understanding speech by watching the speaker's lips, is no substitute for direct communication through a qualified sign language interpreter; many mouth movements appear identical on the lips. Further, even if a primary ASL user were able to determine the sounds appearing on a speaker's lips, they would still not necessarily understand the English language, given that English and ASL are distinct languages.

27. Mr. Deaver wishes to continue his employment with Defendant, who is protected from harassment, discrimination, and retaliation.

28. Because of Defendant's discrimination, Mr. Deaver suffered and continues to suffer from embarrassment, violation of his civil rights, emotional distress, suffering, inconvenience, mental anguish, loss of enjoyment of life, and irreparable damage to his reputation and career prospects.

## CONDITION PRECEDENT

29. Pursuant to the requirements of 42 U.S.C. § 2000e-5, Plaintiff filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Dallas District Office, on or about August 31, 2022.

30. The EEOC issued a Notice of Right to Sue on February 28, 2024.

31. This Complaint is timely in that it was filed within ninety (90) days of the issuance of the Notice of the Right to Sue.

32. Therefore, Plaintiff has satisfied any and all conditions precedent to the filing of his Complaint.

## CAUSES OF ACTION

### CLAIM I: Violations of Title I of the Americans with Disabilities Act

33. Mr. Deaver incorporates by reference all preceding paragraphs and realleges them in support of this claim.

34. At all times relevant to this action, Title I of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, has been in full force and effect and has applied to Defendant's conduct.

35. At all times relevant to this action, Mr. Deaver has been substantially limited in the major life activities of hearing and speaking. Therefore, Mr. Deaver has a disability within the meaning of the ADA. 42 U.S.C. § 12102(2).

36. Mr. Deaver is an employee within the meaning of Title I of the ADA. 42 U.S.C. § 12111(4).

37. Defendant is an employer within the meaning of Title I of the ADA. 42 U.S.C. § 12111(5).

38. Title I of the ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

39. Title I of the ADA defines discrimination to include "limiting, segregating, or classifying a . . . employee in a way that adversely affects the opportunities or status of such . . . employee because of the disability of such . . . employee." 42 U.S.C. § 12112(b)(1).

40. Title I of the ADA defines discrimination to include "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association." 42 U.S.C. § 12112(b)(4).

41. Title I of the ADA defines discrimination to include "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A).

42. Defendant discriminated against Mr. Deaver on the basis of his disability in violation of Title I of the ADA and its implementing regulations.

43. Defendant has failed to implement policies, procedures, and training of staff necessary

to ensure compliance with Title I of the ADA and its implementing regulations.

44. Mr. Deaver is entitled to damages and an award of attorney's fees, costs, and disbursements under the ADA. 42 U.S.C. § 12188(a)(1)–(2); 42 U.S.C. § 2000a-3.

### CLAIM II: Violations of Section 504 of the Rehabilitation Act

45. Plaintiff repeats and re-alleges all preceding paragraphs in support of this claim.

46. At all times relevant to this action, Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, has been in full force and effect and has applied to Defendant's conduct.

47. At all times relevant to this action, Plaintiff has had a substantial limitation to the major life activities of hearing and speaking and has been an individual with a disability within the meaning of the Rehabilitation Act. 29 U.S.C. § 705(9).

48. At all times relevant to this action, Defendant has been a program or activity receiving federal financial assistance pursuant to 29 U.S.C. § 794(b).

49. Pursuant to Section 504 of the Rehabilitation Act, "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794.

50. Defendant subjected Plaintiff to discrimination, solely on the basis of disability, in violation of 29 U.S.C. § 794.

51. Plaintiff is therefore entitled to compensatory damages, injunctive relief, and an award of attorney's fees, costs, and disbursements, pursuant to 29 U.S.C. § 794(a).

### COUNT III: Violations of Chapter 21 of the Texas Labor Code

52. Plaintiff incorporates by reference all preceding paragraphs and realleges them in support of this claim.

53. At all times relevant to this action, the Chapter 21 of the Texas Labor Code ("Chapter 21") has been in full force and effect and has applied to Defendant's conduct.

54. The stated purpose of Chapter 21 is to "provide for the execution of the policies embodied in Title I of the Americans with Disabilities Act of 1990 and its subsequent amendments" and "secure for persons in this state, including persons with disabilities, freedom from discrimination in certain employment transactions, in order to protect their personal dignity." Tex. Lab. Code § 21.001(3)-(4).

55. Defendant is an "employment agency" within the meaning of Tex. Lab. Code § 21.002(8) as the Work Services Corporation is "a person or an agent of the person who regularly undertakes, with or without compensation, to procure: (A) employees for an employer; or (B) the opportunity for employees to work for an employer."

56. Additionally, "an employment agency commits an unlawful employment practice if the employment agency . . . discriminates . . . against an individual because of . . . disability." Tex. Lab. Code § 21.052(1).

57. "Auxiliary aids and services" under Chapter 21 include "qualified interpreter or other effective methods of making aurally delivered materials available to individuals with hearing impairments." Tex. Lab. Code § 21.002(1)(A).

58. Defendant discriminated against Plaintiff based on his disability by creating a hostile work environment, treating him adversely than non-disabled workers, and denying him meaningful access to the services, programs, and benefits Defendant offers to other individuals and by refusing to provide auxiliary aids and services necessary to ensure full use and enjoyment of his employment in violation of Chapter 21.

59. Defendant knew or should have known that its actions and/or inactions created an

unreasonable risk of causing Mr. Deaver greater levels of fear, anxiety, indignity, humiliation, and/or emotional distress than a hearing person would be expected to experience.

60. Plaintiff is entitled to compensatory and punitive damages for the injuries and loss he sustained as a result of Defendant's discriminatory conduct pursuant to Tex. Lab. Code § 21.2585.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Barry Deaver respectfully requests that this Court:

A. Enter a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that Defendants' policies, procedures, and practices have subjected Plaintiff to unlawful discrimination in violation of Title I of the ADA, the RA, and Chapter 21.

B. Enjoin Defendant from implementing or enforcing any policy, procedure, or practice that discriminates against deaf and hard-of-hearing individuals;

C. Order Defendant:

  i. to develop, implement, promulgate, and comply with a policy prohibiting future discrimination, retaliation, and harassment against Plaintiff or other deaf or hard of hearing individuals;

  ii. to develop, implement, promulgate, and comply with a policy to ensure that Defendant will notify individuals who are deaf or hard of hearing of their right to effective auxiliary aids and services;

  iii. to develop, implement, promulgate, and comply with a policy to ensure that Defendant will provide individuals who are deaf or hard of hearing with reasonable accommodation;

      iv.    to train all its employees, staff, and other agents about the rights of individuals who are deaf or hard of hearing under the ADA, the RA, and Chapter 21.

D.    Award to Plaintiff:

      i.    Compensatory damages pursuant to the ADA, the RA, and Chapter 21;

      ii.    Punitive damages pursuant to the ADA and Chapter 21;

      iii.    Reasonable costs and attorneys' fees pursuant to the ADA, the RA, and Chapter 21;

      iv.    Interest on all amounts at the highest rates and from the earliest dates allowed by law;

      v.    Any and all other relief that this Court finds necessary and appropriate.

Dated: May 9, 2024                                Respectfully submitted,

                                                      Andrew Rozynski, Esq. (NY# 5054465)
                                                      arozynski@eandblaw.com
                                                      EISENBERG & BAUM, LLP
                                                      24 Union Square East, Fourth Floor
                                                      New York, NY 10003
                                                      212-353-8700 (tel.)
                                                      212-353-1708 (fax)
                                                      *Attorneys for Plaintiff*